## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| WANDA SILVA, | ) | C.A. No. N25A-05-004 DJB |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE DEPARTMENT OF | ) | |
| LABOR, | ) | |
| Appellee. | ) | |
| | ) | |

Date Submitted:  April 29, 2026
Date Decided: July 21, 2026

**Memorandum Opinion**

*Appeal of the Decision of the Merit Employee Relations Board-* ***Denied***

Wanda Silva, *pro se*, Appellant

Stacey Stewart, *Esquire*, of the Delaware Department of Justice, *Attorney* for Appellee

**BRENNAN, J.**

## I. INTRODUCTION

Appellant Wanda Silva (hereinafter "Silva" or "Appellant") filed a grievance before the Merit Employee Relations Board (the "Board" or "MERB") against the Appellee Delaware Department of Labor ("the DDOL"), claiming that she is performing the work of another position and should be paid accordingly. That grievance was dismissed by MERB and this appeal followed.[1] Given that the MERB's decision was supported by substantial evidence, and free from any errors of law or abuse of discretion, Silva's Appeal is **DENIED**.

## II. FACTUAL BACKGROUND

On November 6, 2022, Silva began her employment with the State of Delaware Department of Labor, Division of Unemployment Insurance (hereinafter "DUI") as a Management Analyst III (hereinafter "MA III").[2] The MA III position is responsible for data analysis for operational management programs. Silva's duties included "performing statistical analysis and interpretation of data related to policies and procedures; analyzing and evaluating effectiveness of operations; studying pertinent legislation, orders, and regulations; and documenting findings of studies and preparing recommendations of implementation of new systems."[3]

---

[1] *Wanda Silva v. Merit Employee Relations Board and Delaware Department of Labor*, Case No. N25A-05-004 DJB Docket Item (hereinafter "D.I.") 1.
[2] Case Record from MERB (hereinafter "R.") at 2, Agency Ex. A.
[3] R. at 3-4, Agency Ex. C.

In the beginning of 2023, Silva and three other MA IIIs were assigned to perform the additional role of Information Security Officers (hereinafter "ISO"). The ISO function is "not a stand-alone merit position but rather a duty added to an already existing position."[4]

Following Silva's ISO designation, the DDOL separately established a new standalone position: Information Security and Compliance Officer (hereinafter "ISCO").[5] This position is more in depth than a MA III with ISO responsibilities, and is responsible for instituting Information Technology security policies across departmental systems.[6] The responsibilities and duties of an ISCO include:

> (1) Develops, implements, and enforces information security policies, standards, best practices and procedures for complex systems and data . . .
> (2) Conducts IT security risk assessments and gap analysis on systems and operational requirements to evaluate effectiveness and identify vulnerabilities and non-compliance.
> (3) Makes recommendations on corrective action to IT security requirements and system designs to resolve issues; evaluates IT security solutions to confirm they meet department, state and federal IT security requirements for processing confidential and sensitive information.
> (4) Performs IT security and internal control reviews on sensitive systems and develops unique security tools and techniques . . .
> (5) Assists department staff on IT security policy and conducts IT security related training.
> (6) Ensures compliance of department IT security options with external entities ....
> (7) Supports a 24x7 operational environment.

---

[4] R. at 3, Grievant Ex. 6.
[5] R. at 3, Grievant Ex. 6.
[6] R. at 3, Agency Ex. D.

(8) May complete the Primary Information Security Officer (ISO) or Alternate Information Security Officer (ISO) duties, as outlined by DTI.[7]

Silva applied for, but was not given, this position, as she did not have the requisite qualifications.[8]

Silva then filed a grievance with the MERB, arguing she was performing the duties of an ISCO, but getting paid at the MA III, ISO level. On February 19, 2025, the Board held a hearing to address Silva's grievance, which was ultimately dismissed on April 23, 2025.[9] Silva now appeals that dismissal.[10]

## III.  PROCEDURAL HISTORY

Silva filed her Notice of Appeal on May 27, 2025,[11] and her Opening Brief on October 24, 2025.[12] The DDOL filed its Answer on November 10, 2025.[13] Silva filed her Reply Brief on December 9, 2025.[14] On March 11, 2026, the Court held oral argument on the appeal.[15] During argument, the Court discussed with the parties the fact that it was unable to verify or locate some of the cases in which Silva relied upon in her briefing. The Court provided Silva thirty (30) days to supplement

---

[7] R. at 3-4, Agency Ex. D.
[8] R. at 4, Hr'g Tr. at 53.
[9] R. at 1-7.
[10] D.I. 1.
[11] *Id.*
[12] D.I. 28.
[13] D.I. 52.
[14] D.I. 54.
[15] D.I. 61.

her briefing with copies of those cases, or "seek withdrawal of her reliance on those cases."[16] Additionally, the Court provided Silva the opportunity to cite to record evidence of the documentation upon which she relied in argument and referenced throughout the hearing.[17] Silva filed her supplement on April 9, 2026.[18] On April 29, 2026, the DDOL responded.[19] This matter is now ripe for decision.

## IV.    STANDARD OF REVIEW

On appeal from an administrative board's final order, review is restricted to whether the Board's decision is "free from legal error and supported by substantial evidence."[20] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21] In reviewing the record to make such a finding, the Court must consider the record in the light most favorable to the prevailing party below.[22] On appeal, this Court "does not sit as trier of fact

---

[16] D.I. 62 at 1.
[17] *Id*. at 1-2.
[18] D.I. 63.
[19] D.I. 64.
[20] *Volk v. Unemployment Ins. Appeal Bd.,* 2016 WL 241379, at *1 (Del. Super. Jan. 13, 2016) (citing 29 *Del. C.* § 10142(d); *Wilson v. Breakers Hotel & Suites,* 2010 WL 2562214 (Del. Super. June 24, 2010)).
[21] *Munyan v. DaimlerChrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).
[22] *General Motors Corp. v. Guy*, Del. Super., C.A. No. 90A-JL-5, Gebelein, J. (Aug. 16, 1991).

with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[23]

Absent any errors of law, a decision of the Board supported by substantial evidence will be upheld unless the Board abused its discretion.[24] Abuse of discretion exists only when the conclusions exceed all bounds of reason in view of the circumstances.[25] The Court cannot afford weight to the evidence presented below, nor can it make credibility or actual findings; the Court's role is limited to a determination of whether the evidence presented below was legally sufficient to support the agency's findings.[26] The Court reviews *de novo* any questions of law presented.[27]

## V. ANALYSIS

As an initial matter, Silva brings forth new evidence and claims not originally asserted during the administrative process below. Specifically, Silva's appeal raises claims of "retaliation and unequal treatment in violation of Merit Rule 2.1"[28] and "violations of UIPL 14-17 and IRS Publication 1075" that were not presented to the

---

[23] *Glanden v. Land Prep, Inc.*, 918 A.2d 1098, 1100 (Del. 2007) (quoting *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).
[24] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *1 (Del. Feb 1, 2012).
[25] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).
[26] *Torres v. MOT Charter Sch.*, 2022 WL 1584508, at *1 (Del. Super. May 19, 2022) (internal citations omitted).
[27] *Person-Gaines*, 981 A.2d at 1161 (internal citations omitted).
[28] D.I. 28 at 5.

BOARD.[29]  The DDOL correctly argues that Silva's reliance on these Board's rules and violations are unrelated to her grievance, based on federal guidelines, laws or policies, and may not be for the first time on appeal.  Even had her new claims been raised below, they fall outside of the Board's jurisdiction and therefore could not have been considered by the Board in the first instance.[30]

This Court's review is "limited to the record that existed at the time of the [Board]'s decision, [and] it cannot now consider new evidence and may only review evidence from the record below."[31]  The Boards's decision was based on Silva's Merit Rule 3.2 grievance.  New arguments that were not raised below to the Board cannot now be considered.

### A. SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S DECISION

As part of her appeal of the Board's decision, Silva argues the MERB misapplied Merit Rule 3.2.  Specifically, she contends under Rule 3.2, "when an employee performs the duties of a higher classification for more than thirty (30) days, the Rules for promotion or temporary promotion apply," and she should have been compensated for the work performed at the higher level.[32]  Silva maintains she has "continuously performed higher-level ISO duties critical to [D]DOL's data

---

[29] *Id*. at 7.
[30] D.I. 52 at 9.
[31] *Moore*, 2023 WL 2808085, at *3.
[32] D.I. 28 at 1.

security and compliance obligations, including managing incident response, coordinating audits, and ensuring adherence to federal standards."[33]

In support, Silva cites to the fact that she was not given the newly created ISCO position. When Silva was not given the ISCO position, the DDOL cited her lack of the requisite "three years of ISO experience" as to why she was not qualified. In her grievance to the Board, Silva acknowledged she did not have that experience, but argued that criteria was impossible to meet, as the ISCO was a newly created position. Silva's argument is made under the view that this requirement is position specific, and because this DDOL position was just created, no one could meet that and she was unnecessarily passed over.[34] On appeal, Silva argues the Board did not consider whether she was qualified for this promotion, as it deemed this argument irrelevant to the issue as to whether she had been "required to work in a higher class in violation of Rule 3.2."[35] The Board's role was to address Silva's grievance according to Rule 3.2, which required a comparison of the job duties. The Board did not commit an abuse of discretion, error, or misapplication of law when it did not consider this evidence.

The DDOL asserts Silva failed to satisfy the burden imposed by Merit Rule 3.2, and, accordingly, failed to establish that the daily work that she was performing

---

[33] *Id.*
[34] *Id.* at 2.
[35] R. at 6.

was more aligned with a higher paid position.[36]  Further, the DDOL argues the Board's decision is supported by the substantial record of "documentary and testimonial evidence," as well as prior decisions where the Board applied a similar standard of review to determine whether an employee's day-to-day tasks were more aligned with a higher paygrade position.[37]  The DDOL is correct.

Merit Rule 3.2 States:

> Employees may be required to perform any of the duties described in the class specification, any other duties of a similar kind and difficulty, and any duties of similar or lower classes.  Employees may be required to serve in a higher position; however, if such service continues beyond 30 calendar days, the Rules for promotion or temporary promotion shall apply, and they shall be compensated appropriately from the first day of service in the higher position.[38]

Under Rule 3.2, an employee may be required to perform similar duties as those required for their existing job class specification.  However, only when they perform duties at a higher position will they be compensated accordingly.

In *Jenkins v. State of Delaware*, the Court analyzed an appeal stemming from an employee's grievance alleging that he was performing work at a higher classification level and should therefore be compensated accordingly.[39]  On appeal, the Superior Court found substantial evidence existed to support the Board's finding

---

[36] D.I. 52 at 7-8.
[37] D.I. 52 at 8, n.3.
[38] Merit Employee Relations Board R. 3.2.
[39] *Jenkins v. State of Delaware, Dep't of Health & Soc. Servs.*, 2010 WL 663966, at *2-3 (Del. Super. Jan. 29, 2010).

9

Jenkins failed to provide sufficient evidence to prove he was performing the majority of his daily duties at the higher-level work position.[40] Consistent with *Jenkins*, the burden is on Silva to establish she was performing the level of work of an ISCO.

Using the standard set forth in its previous decisions, the MERB denied Silva's grievance.[41] In *Bertin v. DHSS/DDDS,* the MERB determined that "[a]n increase in the volume of work assigned to an employee by itself does not constitute working out of class[;]" instead, an employee must establish that they have performed "a substantial portion of the duties of a higher classification for a period greater than 30 days."[42] In *Bertin*, the Board granted the employee's grievance as it found that Berlin was performing duties "outside of her classification" as a Nursing Supervisor as well as those duties reserved for the Nursing Director classification.[43] The Board's decision was largely based on a finding the duties Berlin was tasked with exceeded the scope of those responsibilities and were more in line with the higher classification.[44]

---

[40] *Id*.
[41] *Sharon Bertin v. DHSS/*DDDS, MERB Docket No. 20-10-789 at 4 (Sept. 23, 2021); Brabson *v. Del. Dept. of Servs. for Children, Youth and Their Families,* MERB Docket No. 21-07-811 at 5 (Dec. 1, 2021); *Jenkins v. DHSS*, MERB Docket No. 07-01-380 at 5 (May 15, 2008).
[42] MERB Docket No. 20-10-789 at 4 (Sept. 23, 2021).
[43] *Id*. at 2.
[44] *Id*. at 3-4.

In *Brabson v. DSCYF/DYRS*, the Board found that compensation at a higher paygrade classification was warranted because the employee's current responsibilities as a Regional Manager had "expanded beyond the duties set forth" in the Agency's classification and were primarily functioning and performing "most if not all of the essential functions" of the higher classification.[45] That is not the case here.

Silva did not establish she was exclusively performing ISCO duties, which would implicate Merit Rule 3.2 and necessitate compensation at a higher pay grade. The Board largely based its decision on Silva's inability to meet her burden. The primary functions of an ISCO include effectuating agency wide duties and "developing IT policies and standards," duties which Silva was not responsible for or fulfilling.[46] Silva's ISO designation alone is not sufficient to show she was doing the work of another position. The ISO designation simply expanded Silva's roles and responsibilities as a Management Analysist. As a designated ISO, Silva conducts risk assessments and audits, as well as investigations concerning violations by DUI employees.[47] Silva's larger workload with the ISO designation surely added

---

[45] MERB Docket No. 21-07-811 at 3-4 (Dec. 1, 2021).
[46] R. at 5, Agency Ex. D.
[47] D.I. 28 at 7.

11

on to her typical responsibilities,[48] but that does not necessarily mandate that her new responsibilities fall in line with the ISCO position.

The Board was presented with testimony from DDOL Human Resources Director Tristan Press (hereinafter "Press"), Deputy Director of DUI, James Billips (hereinafter "Billips"), DDOL Information and Security Officer Eric Heintz (hereinafter "Heintz") – Silva's witness – and Silva.[49] This testimony established that while the ISCO position requires performing many of the same functions and duties as an ISO, it is a distinct position which imposes additional, more specialized responsibilities than an ISO designation. The ISO designation serves as the point of contact for security issues within its assigned organization or department and is primarily focused on implementing and monitoring security controls to ensure compliance, while the ISCO position is responsible for developing, implementing, and enforcing IT security policies, systems, and standards to ensure the systems comply with all applicable mandates. Additionally, the ISCO position is responsible for developing and updating IT security policies and procedures as well as IT security plans, supporting a 24/7 operational environment across one or more state agencies, and engaging outside of normal working hours when needed.[50]

---

[48] *Id.*

[49] R. at 1-7.

[50] Information Security and Compliance Officer "ISCO" Job Description, R. at 117-119.

The Board had substantial evidence to conclude that the ISO duties represent only a portion of the broader responsibilities of an ISCO. Heintz explained that in her current position, Silva was "not wholly" performing the "duties enumerated in the Information Security and Compliance Officer Job Description."[51] Further, Billups testified that though Silva, as a MA III, ISO designation, performs some ISCO duties, it is not "what she does all day long."[52] Billups's testimony supported the conclusion that the duties of an ISCO are different than those of a MA III, even with the ISO designation.[53]

While Silva requests the Court reexamine whether the Board correctly concluded that Rule 3.2 was not violated, that is not the Court's role on appeal. On appeal, Superior Court "does not stand as the trier of fact ... and, therefore, it cannot substitute its own opinion for that of the [MERB's] if there is sufficient evidence to support the [MERB's] decision."[54] Accordingly, having found substantial evidence supports the Board's decision, it will be upheld.

---

[51] R. at 6, Hr'g Tr. at 41.
[52] R. at 6, Hr'g Tr. at 92.
[53] *Id.* at 95-96.
[54] *Id*. (citing *Lopicko v. Del. Dep't of Servs. For Children,* 2003 WL 21976409, at *3 (Del. Super. Aug. 15, 2003).

## B. The MERB Neither Erred as a Matter of Law, Nor Abused Its Discretion When it Denied Silva's Continuance Request

Silva's appeal additionally argues the Board committed an error of law and abused its discretion when it denied her third continuance request of the hearing below. In advancing her claim that the Board erred as a matter of law, she asserts the MERB "ignored key testimony, refused to hear retaliation evidence, and denied a continuance despite a valid subpoena for the Chief Security Officer."[55] In response, the DDOL contends that the Board acted within its discretion to conduct hearings consistent with the Administrative Procedures Act, Chapter 101 of Title 29, and exercised reasonable judgment considering the circumstances when it denied this continuance request.[56] Prior to the February 19, 2025, hearing, Silva had twice requested continuances, both of which were granted by the Board.[57] Silva had identified two intended witnesses at the pre-hearing conference held by the Board: Division of Technology and Information Chief Security Officer Solomon Adote (hereinafter "Adote") and Heintz. She was permitted by the Board to call these witnesses over the DDOL's objcetion.[58] At the February 19, 2025, hearing, Heintz appeared; Adote did not.

---

[55] D.I. 28 at 11.
[56] D.I. 52 at 11.
[57] *Id*.
[58] R. at 26, 171-172.

The DDOL maintains that the proffered testimony of Adote was of no consequence to the outcome of Silva's grievance, as his proffered testimony was cumulative testimony to Heintz's, therefore his absence was an insufficient ground for a continuance.[59]  Regardless, pursuant to 29 *Del. C.* § 10125(b)(3), the MERB has inherent authority "to [e]xclude plainly irrelevant, immaterial, insubstantial, cumulative and privileged evidence."[60]  In proceeding with the hearing despite Adote's absence, the Board reserved judgment to determine whether Adote's testimony would have been critical to the decision at hand.[61]  Ultimately, the Board proceeded with the full hearing after its determination that Adote was not critical.  In doing so, the Board exercised its discretion afforded by Section 10125(b)(3) and was not an abuse of discretion.  The record supports this testimony would have been cumulative and nothing has been presented to suggest otherwise the Board erred in its determination.

---

[59] *Id*. at 11-12.

[60] *Billings v. Merit Emp. Rels. Bd*., 2015 WL 652046, at *10 (Del. Super. Feb. 13, 2015) (citing 29 *Del. C.* § 10125(b)(3)).

[61] R. at 36.

## VI.   CONCLUSION

Therefore, the MERB's decision to deny Silva's grievance is supported by sufficient evidence.  The MERB neither abused its discretion, nor erred as a matter of law in its findings or rulings.  Accordingly, the decision of the MERB is **AFFIRMED** and Silva's appeal is **DENIED**.

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge